UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNI MCDOWELL,<br><br>        Plaintiff,<br><br>   v.<br><br>STEVE SMITH, et al.,<br><br>        Defendants. | No. 1:24-cv-00500-SAB (PC)<br><br>ORDER DENYING DEFENDANT SMITH'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>(ECF No. 49)<br><br>**AMENDED SCHEDULING ORDER** |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983. The parties have consented to Magistrate Judge jurisdiction. (ECF No. 44.)

Currently before the Court is Defendant Smith's motion for summary judgment for failure to exhaust the administrative remedies, filed April 15, 2025. (ECF No. 49.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on Plaintiff's deliberate indifference claim against Defendants Smith, Storey, Davis, and Cobian. (ECF No. 17.)

Defendant filed an answer to the operative complaint on November 8, 2024. (ECF No. 28.)

The discovery and scheduling order was issued on December 13, 2024. (ECF No. 37.)

1

On April 15, 2025, Defendant Smith filed the instant exhaustion motion for summary judgment. (ECF No. 49.) Plaintiff filed an opposition on May 5, 2025, and Defendant Smith filed a reply on May 15, 2025. (ECF Nos. 50, 51.)

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///

**B.     Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly

3

reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Description of CDCR's Administrative Remedy Process

CDCR provides an administrative grievance process for prisoners in accordance with Title15 of the California Code of Regulations. (DUF 4.) This process was available to Plaintiff at all times between February 14, 2023, (the date of the riot) and April 26, 2024, (the date Plaintiff filed his original complaint). (DUF 5.)

As of June 1, 2020, a prisoner is required to follow procedures set forth in California Code of Regulations, Title 15, sections 3480-3487 when submitting a grievance. (UF 4.)  The administrative grievance process has two levels of review—a review at the institutional level with the Office of Grievances (OOG) and a review at the Office of Appeals (OOA) in Sacramento. (Id.) This process requires the prisoner to submit a Form 602-1 to the OOG at the institution where the prisoner is housed within 60 days of the date the prisoner knew or should have known of the adverse policy, decision, action, condition, or omission. (UF 5; Cal. Code Regs., tit. 15, §§ 3482(a)(1), (b)(1).) A prisoner's grievance must describe all information known and available regarding the claim, including key dates and times, names and titles of all involved staff (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge. (UF 6; Cal. Code Regs., tit. 15 § 3482(c)(1).)  If the prisoner is unsatisfied with the institutional OOG decision, he may submit an appeal (CDCR Form 602-2) to the OOA within 60 days of discovering the decision by the OOG. (UF 7; Cal. Code Regs., tit.15 § 3484(b)(1).)  A final decision by the OOA is required to exhaust a grievance. (Id.)

### B.     Allegations of Complaint

There was an excessive risk of placing Plaintiff (a Black inmate) with White and Hispanic inmates immediately after a racial riot whereas GBI/SBI were directly by-products of the situation.  "1) GBI/SRI even if still impending and not yet incurred substantive excessive risk. 2) I informed C/O's of aforementioned impending harm, yet to no avail."  Also, CDCR substantiated the claims in the internal investigation, proving its validity.  CDCR knew the riot was racially

1  motivated and placed Plaintiff with Whites and Hispanics endangering his safety.

2  Defendant Steve Smith knew of the danger and personally minimized it saying "this is
3  program yard." Sergeant Storey and officer Luis Cobian personally moved Plaintiff to said
4  danger and were reasonably aware of the impending harm. Officer Joseph Davis also knew of the
5  impending harm of placing a Black with White and Hispanic inmates especially after a racial riot
6  and knowingly left him in danger and even mocked Plaintiff stating, "you don't look very Black
7  to me."

8      **C.**    **Statement of Undisputed Facts[1]**

9      1.    At all times relevant to the allegations in the FAC, Plaintiff Giovanni McDowell
10  was incarcerated at Sierra Conservation Center (SCC). (ECF No. 13.)

11      2.    Defendant Smith was employed as Chief Deputy Warden at SCC at the time of the
12  alleged events. (ECF No. 27 at 2:3-5.)

13      3.    CDCR has an administrative grievance process that is available to all inmates at
14  SCC. This process was available to all inmates in 2023, when the alleged events in this case
15  occurred, and is currently available to all inmates. (ECF No. 13 at 2; Moseley Decl. ¶ 6;
16  Williams Decl. ¶ 3.)

17      4.    As of June 1, 2020, an inmate is required to follow procedures set forth in
18  California Code of Regulations, Title 15, sections 3480-3487 when submitting a grievance. The
19  administrative grievance process has two levels of review—a review at the institutional level with
20  the Office of Grievances (OOG) and a review at the Office of Appeals (OOA) in Sacramento.
21  (Williams Decl. ¶ 4; Moseley ¶ 6.)

22      5.    This process requires the inmate to submit a Form 602-1 to the OOG at the prison
23  where the inmate is housed within 60 days of the date the prisoner knew or should have known of
24  the adverse policy, decision, action, condition, or omission. (Williams Decl. ¶ 4; Cal. Code
25  Regs., tit. 15, §§ 3482(a)(1), (b)(1) (2024).)

26      6.    An inmate's grievance must specify each claim and the relief requested, and name
27  all involved staff members and describe their alleged conduct. (Williams Decl. ¶ 4; Cal. Code

---

[1] Hereinafter referred to as "UF."

5

1 Regs., tit. 15 § 3482(c)(2) (2024).)

2     7.    If the inmate is unsatisfied with the institutional OOG decision, they may submit an appeal (CDCR Form 602-2) to the OOA within 60 days of discovering the decision by the OOG. A final decision by the OOA is required to exhaust an inmate grievance.  (Williams Decl. ¶ 4; Moseley Decl. ¶ 5; Cal. Code Regs., tit. 15 § 3484(b)(1) (2024).)

    8.    Between February 14, 2023, (the date of the alleged events) through April 26, 2024, (the date Plaintiff filed this lawsuit), Plaintiff submitted a grievance that mentioned Defendant Smith and the relevant allegations: Grievance Log No. 404799.  (Williams Decl. ¶¶ 7-9.)

    9.    In Grievance Log No. 404799, received on May 30, 2023, Plaintiff alleged, among other things, that after a February 14 riot, "custody staff" intentionally detained him with the wrong race to get him physically hurt. Plaintiff also alleged that, on an unspecified date, he spoke to Defendant Smith who said that Plaintiff's allegations would be taken seriously, but Plaintiff claimed that there had been no investigation.  (Williams Decl. ¶ 9, Ex. B.)

    10.    Plaintiff did not appeal Grievance Log No. 404799.  (Moseley Decl. ¶¶ 7, Ex. 2; 11.)

    11.    Between February 14, 2023, (the date of the alleged events) through April 26, 2024, (the date Plaintiff filed this lawsuit), Plaintiff submitted four grievances that are relevant to the allegations in his complaint: Grievance Log Nos. 439737, 384492, 370267, and 370266. (Williams Decl. ¶¶ 10-14.)

    12.    In Grievance Log No. 439737, received on August 24, 2023, Plaintiff alleged that on February 14, 2023, Officer Davis kept Plaintiff in a holding area with White and Hispanic inmates after a race riot, even though Plaintiff informed Officers Davis and Cobian that keeping him in the White and Hispanic area was endangering his life because he was Black. Plaintiff also alleged that Sergeant Storey asked another officer if Plaintiff should be moved with the Black inmates. Plaintiff claimed that 30 minutes later, he was moved to the holding area with Black inmates.  (Williams Decl. ¶ 11, Ex. C.)

///

6

13. Plaintiff did not appeal Grievance Log No. 439737. (Moseley Decl. ¶¶ 7, Ex. 2; 11.)

14. In Grievance Log No. 384492, received on April 5, 2023, Plaintiff alleged, among other things, that he did not receive grievance responses for claims of SCC administration's retaliatory actions including "being put with the wrong race after an alleged race riot transpired" on an unspecified date. (Williams Decl. ¶ 12, Ex. D.)

15. Plaintiff did not appeal Grievance Log No. 384492. (Moseley Decl. ¶¶ 7, Ex. 2; 11.)

16. In Grievance Log No. 370267, received on March 1, 2023, Plaintiff claimed, among other things, that he was erroneously written up for participation in a riot on February 14. Plaintiff further alleged that he was put in the chow hall with White and Hispanic inmates immediately after the riot although he told custody staff multiple times that he was African American. (Williams Decl. ¶ 13, Ex. E.)

17. In Appeal Log No. 370267, Plaintiff alleged that a Classification Committee failed to return Plaintiff to fire camp and improperly denied Plaintiff a gate pass. Plaintiff further alleged that Plaintiff was written up for participating in a riot on February 14, but Plaintiff did not participate in the riot. Plaintiff also alleged that despite telling custody staff multiple times that Plaintiff was African American, Plaintiff was placed in a chow hall with White and Hispanic inmates immediately after the riot in an attempt to physically hurt Plaintiff in retaliation for Plaintiff's utilization of the grievance process. Appeal Log No. 370267 was received by the OOA on April 18, 2023, and denied on June 17, 2023. (Moseley Decl. ¶ 10, Ex, 4.)

18. In Grievance Log No. 370266, received on March 1, 2023, Plaintiff alleged that he informed custody staff that he was Black, but was still taken to the White and Hispanic holding area after a race riot on February 14, 2023. Plaintiff further claimed that Officer Davis moved him to the correct area over 30 minutes later. Plaintiff also alleged that Officer Davis was informed by another officer that Plaintiff was Black. Plaintiff requested that CDCR drop Rules Violation Report Log No. 7271860. (Williams Decl. ¶ 14, Ex. F.)

///

7

1       19.     Plaintiff did not appeal Grievance Log No. 370266.  (Moseley Decl. ¶ 11.)

2       20.     In Appeal Log No. 445178, Plaintiff alleged that Defendant Smith did not exercise due diligence while overseeing an investigation that concerned Plaintiff.  Appeal Log No. 445178 was received by the OOA on December 5, 2023, and denied on February 4, 2025.  (Moseley Decl. ¶ 9, Ex. 3.)

      21.     The OOA located other appeals received by the OOA from Plaintiff during the relevant time period, but they did not contain any of the relevant allegations: Log Nos. 511839, 509132, 500403, 487516, 480515, 479990, 470879, 468903, 452585, 449726, 442180, 438910, 438909, 438906, 403051, 373828, 369340, 369334, 361207, 348751, and 346041.  (Moseley Decl. ¶ 11.)

      22.     Other than the grievances described above, a review of the SOMS database indicates that no other relevant grievances were received and/or submitted at SCC by Plaintiff between February 14, 2023, and April 26, 2024.  (Williams Decl. ¶ 15.)

### D.    Analysis of Defendant's Motion

In the operative complaint, Plaintiff alleges that Defendant Smith, among others, was deliberately indifferent to his safety when he, a Black inmate, was placed with White and Hispanic inmates following a racial riot.  (ECF No. 13 at 3.)  Plaintiff specifically alleges that Defendant Smith knew of the danger and personally minimized it by saying "this is A program yard."  (Id. at 4.)

Defendant Smith argues that Plaintiff failed to exhaust the administrative remedies as to him because the only relevant grievances failed to provide sufficient notice to SCC about Plaintiff's claim.

In opposition, Plaintiff argues that Grievance Log Nos. 404799 and 439737, both mentioned Defendant Smith, and in Staff Misconduct Tracking System Log No. 20049561, CDCR duplicated Claims 3 and 6 as referring to "Billy Pearson," when one of those claims should name "Steve Smith."  (ECF No. 50 at 1.)

In response, Defendant Smith argues that Log No. 404799 mentioned Defendant Smith, but it did not alert prison officials about his conduct as alleged in this action.  Further, Log No.

8

1  439737 never mentioned Defendant Smith. In addition, Plaintiff provides no evidence that Log

2  No. 20049561 duplicated claims to include the name of officer Pearson and omit Defendant

3  Smith. Moreover, to the extent Log No. 20049561 was generated in response to Log No. 404799

4  or Log No. 439737, neither of these grievances served to exhaust the deliberate indifference claim

5  against Defendant Smith.

6       Here, Defendant has failed to meet their initial burden of showing that there was an

7  available administrative remedy, and Plaintiff failed to exhaust such remedies as to his deliberate

8  indifference claim against Smith. Albino, 747 F.3d at 1172. Even assuming that Plaintiff's

9  administrative remedies were not exhausted when he initiated this case on April 26, 2024, such

10  date is not conclusive when an amended complaint has been filed. In Saddozai v. Davis, 35 F.4th

11  705 (9th Cir. 2022), the Ninth Circuit held that "a prisoner who has fully complied with the

12  PLRA's exhaustion requirement need not file an entirely new federal case simply because he had

13  not exhausted when he filed his original federal complaint." Id. at 706. The Ninth Circuit

14  reversed the district court's dismissal of the plaintiff's third amended complaint on grounds

15  including failure to exhaust prior to commencing suit, holding that the PLRA's exhaustion

16  requirements apply based on the filing date of the *operative* complaint. Id. at 708 (emphasis

17  added). This is so because as a general rule, an amended complaint supersedes the original

18  complaint and a supplemental complaint can raise additional facts as to exhaustion of the

19  administrative remedies. Id. at 709; see also Ramirez v. County of San Bernardino, 806 F.3d

20  1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being

21  treated thereafter as non-existent.' ").

22       Here, Plaintiff filed his first amended complaint on July 25, 2024, three months after

23  Plaintiff filed the original complaint. Defendant has made no argument and does not address

24  why Plaintiff's claim against him would not be deemed exhausted by the filing of the first

25  amended complaint, i.e., July 25, 2024. Indeed, a review of Appeal History Report for the

26  grievances filed by Plaintiff reflects that Plaintiff filed several other grievances (from April 26,

27  2024 to July 25, 2024), including a "grievance at SCC on May 26, 2024 (Log No. 570309),

28  categorized as "general employee performance". (Moseley Decl., Ex. 1.) Consequently, because

Defendant has not shown that Plaintiff failed to exhaust his available administrative remedies by the filing of his first amended complaint, the Court recommends that Defendant Smith's exhaustion motion for summary judgment be denied.

## IV.
## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendant Smith's exhaustion motion for summary judgment, filed on April 15, 2025, (ECF No. 49), is DENIED;
2. The stay of merits-based discovery, (ECF No. 53), is VACATED;
3. The deadline for completion of all discovery is **November 10, 2025**;
4. The deadline for filing dispositive motions is **January 12, 2026**; and
5. All other substantive provisions of the Court's December 13, 2024, discovery and scheduling order remain in effect.

IT IS SO ORDERED.

Dated:   **July 31, 2025**

STANLEY A. BOONE
United States Magistrate Judge